SEYFARTH SHAW LLP
Robert S. Niemann (SBN 087973)
rniemann@seyfarth.com
560 Mission Street, Suite 3100
San Francisco, California 94105
Telephone: (415) 397-2823
Facsimile: (415) 397-8549

GEORGE H. GERSTMAN
*Appearing (Pro Hac Vice)*
ggerstman@Seyfarth.com
SEYFARTH SHAW LLP
131 S. Dearborn Street, Suite 2400
Chicago, Illinois 60603
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

BRIAN L. MICHAELIS
*Appearing (Pro Hac Vice)*
bmicaelis@seyfarth.com
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, Massachusetts 02210
Telephone: (617) 946-4800
Facsimile: (617) 946-4801

Attorneys for Defendant
NITEK International, LLC.

UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETWORK VIDEO TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> NITEK INTERNATIONAL, LLC and DOES 1-10 <br><br> Defendant. | Case No. C 08 2208 MHP <br><br> **DEFENDANT NITEK INTERNATIONAL, LLC's MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION UNDER F.R.C.P. 12(B)(1)** <br><br> Date:  July 28, 2008 <br> Time:  2:00 p.m. <br> Place:  Courtroom 15, 18th Fl. |

TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   ISSUE TO BE DECIDED: SUBJECT MATTER JURISDICTION ........................2

III.  STATEMENT OF THE FACTS ............................................................................2

    A.   The Parties ...................................................................................................2

    B.   The '149 Patent ............................................................................................3

    C.   There was no Pre-Litigation Communication Between NVT
         and NITEK Regarding Infringement of the '149 Patent ..............................3

    D.   NVT's "Controversy" Assertions .................................................................4

IV.  ARGUMENT - No "Actual Controversy" Exists In This Case To
      Support The Exercise of Declaratory Judgment Act Jurisdiction............................6

    A.   The Declaratory Judgment Act requires an "actual controversy" ..............6

    B.   NVT's allegations of jurisdictional "facts" do not demonstrate
         an "actual controversy" under the Declaratory Judgment Act.....................7

        1.   The press release issued by NITEK did not create
            an actual controversy .......................................................................7

        2.   NVT's allegation that NITEK "intimated" that it might
            "enforce" its rights under the '149 Patent against NVT
            is not supportable and does not create an actual controversy .......8

        3.   The license sought by NVT and provided in response to
            NVT filing the first DJ action does not support an actual
            controversy ....................................................................................10

        4.   None of the facts alleged by NVT, alone or in combination
            support an actual controversy .......................................................12

    C.   This Court should decline to exercise jurisdiction even if an actual
         controversy exists........................................................................................14

V.   CONCLUSION........................................................................................................15

# TABLE OF AUTHORITIES
## FEDERAL CASES

*Benitec Austl., Ltd. v. Nucleonics, Inc.*,
   495 F.3d 1340 (Fed. Cir. 2007)..................................................................................6, 13

*Bridgelux, Inc. v. Cree, Inc.*,
   2007 U.S. Dist. LEXIS 14472 (N.D. Cal., Feb. 15, 2007) ..............................................10

*Bridgelux, Inc. v. Cree, Inc.*,
   2007 U.S. Dist. LEXIS 53137 (N.D. Cal. 2007) .........................................................7, 14

*EMC Corp. v. Norand Corp.*,
   89 F.3d 807 (Fed. Cir. 1996)..........................................................................6, 12, 14, 15

*Geisha v. Tuccillo*,
   2007 U.S. Dist. LEXIS 65348 (N.D. Ill. 2007) ................................................................13

*IVX Animal Health, Inc. v. Burger*,
   475 F. Supp. 2d 1264 (2007) ...........................................................................................12

*Jervis B. Webb Co. v. Southern Systems, Inc.*,
   742 F.2d 1388 (Fed. Cir. 1984).........................................................................................6

*Maryland Casualty Co. v. Pacific coal & Oil Co.*,
   312 U.S. 270 (1941) ..........................................................................................................7

*MedImmune, Inc. v. Genentech, Inc.*,
   127 S. Ct. 764 (2007)..............................................................................................6, 7, 13

*SanDisk Corp. v. STMicroElectronics, Inc.*,
   480 F.3d 1372 (Fed. Cir. 2007).........................................................................................6

*Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*,
   2007 U.S. App. LEXIS 18465 (Fed. Cir. 2007) ..............................................................14

*West Interactive Corp. v. First Data Resources, Inc.*,
   972 F.2d 1295 (Fed. Cir. 1992).........................................................................................6

*Wilton v. Seven Falls Co.*,
   515 U.S. 277 (1995)..........................................................................................................6

## FEDERAL STATUTES

35 U.S.C. § 271(a) ...................................................................................................................13
35 U.S.C. § 271(b) ...................................................................................................................13
35 U.S.C. § 271(c) ...................................................................................................................13
35 U.S.C. §301 .........................................................................................................................14
28 U.S.C. § 2201 ...................................................................................................................2, 6

United States Constitution, Article III .......................................................................................6

## I. INTRODUCTION

This is not the first time that Plaintiff, Network Video Technologies, Inc. ("NVT"), filed an action against Defendant NITEK "for declaratory judgment of non-infringement, invalidity and unenforceability of United States Patent No. 7,193,149 ("the '149 Patent"), owned by NITEK. In fact, the same facts that NVT raises in the present action were previously presented by NVT in a declaratory judgment (DJ) action in the Central District of California: *Network Video Technologies, Inc., v. Nitek International, LLC; and Does 1-10*, Civil Action No. CV-07-4789 AHM (RZx).[1] (*See* Gerstman Decl., Ex. 1, FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT NON-INFRINGEMENT, INVALIDITY AND UNENFORCEABILITY, "the first DJ action"). The first DJ action filed by NVT against NITEK was dismissed by Judge Matz. (*See* Gerstman Decl., Ex. 2, Reporter's Transcript Of Proceedings). NVT has appealed that dismissal and the appeal was docketed in the Court of Appeals for the Federal Circuit ("CAFC") on April 14, 2008. (*See* Gerstman Decl., Ex. 3, CAFC Docket).

Nonetheless, unhappy with the decision by Judge Matz, NVT filed the instant, second action "for declaratory judgment of non-infringement, invalidity and unenforceability of United States Patent No. 7,193,149," harassing NITEK, imposing needless cost, and unnecessarily consuming judicial resources. In seeking a second bite at the apple with the present Complaint ("the second DJ action"), as before NVT does not allege that NITEK has asserted its rights under the '149 Patent against NVT, nor charged NVT with infringement, nor accused NVT of any infringing acts.

In the first DJ action the court found that "there were no threats that defendant [NITEK] had directly issued at all." (Ex. 2, Reporter's Transcript Of Proceedings, pg. 5, lines 19-20). In fact, NITEK has NOT accused NVT of infringement of the '149 patent nor threatened NVT in any way. Quite to the contrary, in seeking dismissal of the first DJ action NITEK represented to the Court in Los Angeles that "we [NITEK] really have no controversy with NVT at this time,

---

[1] The referenced exhibits to the instant Motion are found in the Appendix of Exhibits accompanying the Declaration of George Gerstman ("Gerstman Decl.") filed concurrently herewith.

1
DEF.'S MEMO OF P&A'S ISO MTN TO DISMISS COMPLAINT - CASE NO. C 08-2208 MHP

and as far as we know, there's really no problem with NVT... we [NITEK] have no plans to file a lawsuit against NVT at this time." (Ex. 2, Reporter's Transcript Of Proceedings, pg. 7, line 16 – pg. 8, line 4). NITEK further represented to the Court that "we [NITEK] really have no intent to file a suit against this plaintiff [NVT]." (Ex. 2, Reporter's Transcript Of Proceedings, pg. 18, lines 10-11). Nothing has changed since the first DJ action.[2]

A declaratory judgment plaintiff must establish the existence of an "actual controversy." 28 USC § 2201. If there is no "actual controversy," the court lacks subject matter jurisdiction and the Complaint must be dismissed.

In this case, NVT cannot possibly establish the existence of an "actual controversy" because NITEK has never asserted its rights under the '149 Patent against NVT nor accused NVT of infringing acts. Moreover, NVT has not itself alleged that it engages in any activity that could subject it to claims of infringement by NITEK. Therefore, this case should be dismissed for lack of subject matter jurisdiction because there is no "actual controversy."

## II.   ISSUE TO BE DECIDED: SUBJECT MATTER JURISDICTION

There is but a single issue to be decided in this motion: Did an actual and justiciable controversy exist between NVT and NITEK concerning the '149 Patent at the time NITEK filed this lawsuit?

## III.   STATEMENT OF THE FACTS

### A.   The Parties

Plaintiff NVT is a California corporation with its principal place of business at 4005 Bohannon Drive in Menlo Park, California. (Gerstman Decl., Ex. 4, Complaint ¶ 4). NVT is a business competitor of NITEK. (Gerstman Decl., Ex. 5, Declaration of Edward L. Polanek ("Polanek Decl.") ¶ 13).[3] NVT's website says it is a "security industry leader in twisted pair based video transmission technology." (Gerstman Decl., Ex. 5, Polanek Decl. ¶ 14, Exh. A).

---

[2] The facts in the present Complaint that were not pled in the complaint in the first DJ action were set forth in the briefs that were filed in the Central District and were considered by the Court.

[3] This Declaration of Edward L. Polanek ("Polanek Decl.") was filed in the first DJ action. Many of the Declarations submitted as Exhibits to this Motion are the same Declarations submitted in seeking dismissal of the first DJ action because the facts have not changed.

1  Defendant NITEK, is an Illinois limited liability company with its only place of business at 5410 Newport Drive, Suite 24, Rolling Meadows, Illinois. (Gerstman Decl., Ex. 5, Polanek Decl. ¶ 1). NITEK sells products for the security industry, primarily used in closed circuit video and control system applications. NITEK's products are typically designed to provide video links, data links, and power over twisted pair cables and leased telephone lines. (Gerstman Decl., Ex. 5, Polanek Decl. ¶ 3).

NITEK is presently the sole owner of all right, title and interest in the '149 Patent. (Gerstman Decl., Ex. 5, Polanek Decl. ¶ 7). Prior to October 2, 2007, Anixter, Inc., headquartered in Glenview, Illinois, ("Anixter") jointly owned the '149 Patent with NITEK. (Gerstman Decl., Ex. 5, Polanek Decl. ¶¶ 6-7). The joint ownership of the '149 Patent by NITEK and Anixter ended on October 5, 2007, when Anixter assigned its rights in the '149 Patent to NITEK. (Id.)

**B.    The '149 Patent**

The '149 Patent, entitled "System Handling Video, Control Signals and Power" issued on March 20, 2007 (Gerstman Decl., Ex. 6). Neither NITEK nor previous joint owner Anixter has ever charged NVT with infringement of the '149 Patent, or ever asserted any patent rights against NVT. (Ex. 5, Polanek Decl. ¶¶ 17-18).

**C.    There was no Pre-Litigation Communication Between NVT and NITEK Regarding Infringement of the '149 Patent**

In relation to the first DJ action, there was no communication between NVT and NITEK regarding infringement of the '149 Patent until after NVT's attorney, Gary A. Hecker, sent Edward L. Polanek, president of NITEK, an email and fax notice that NVT had filed a declaratory judgment action against NITEK. (Gerstman Decl., Ex. 5, Polanek Decl. ¶¶ 17-18, Exh. C). Prior to the filing of the first DJ action, there was only a press release sent by NITEK announcing the issuance of the '149 Patent to trade publications and to hundreds of customers and competitors throughout the United Stated, including NVT. (Gerstman Decl., Ex. 5, Polanek ¶ 17, Exh. D). The press release did not include the term "infringement," or accuse anyone of infringing. (Id.)

3
DEF.'S MEMO OF P&A'S ISO MOTION TO DISMISS COMPLAINT - CASE NO. C08-2208 MHP

Mr. Polanek was understandably surprised to learn about NVT's Complaint bringing the first DJ action because no one at NITEK had ever asserted that NVT infringes the '149 Patent. (Gerstman Decl., Ex. 5, Polanek Decl. ¶¶ 17-18). NITEK has never filed suit for infringement of the '149 Patent or for any of NITEK's patents. (Id.) NITEK had never been involved in a patent infringement lawsuit either as a plaintiff or a defendant until NVT brought the first DJ action. In short, NITEK never asserted any patent rights against NVT nor threatened NVT in any way.

Since dismissal of the first DJ action there have been no threats or even communications directed at NVT regarding any NITEK patent. And, in its allegations in the instant Complaint in this second DJ action NVT does not make <u>any</u> allegations that there have been any threats or assertions of the '149 patent against any NVT product.

### D. NVT's "Controversy" Assertions

As is discussed in detail in the Arguments below, the Complaint in this second DJ action does not present facts, nor do any facts exist, upon which to base an alleged "controversy" between NVT and NITEK. NVT alludes to the press release issued by NITEK, asserted as a basis of actual controversy in the first DJ action, and uses it to assert that "Nitek broadly claims the '149 Patent covers the use of UTP structured cabling for CCTV applications. [and] Nitek also claims that the '149 Patent covers the 'core technology' of its UPTLinks Products, which are the products that Nitek sells in competition with NVT products." (Gerstman Decl., Ex. 4, Complaint ¶ 13). The press release is also at the heart of NVT's assertion that "after the '149 patent issued, Nitek immediately e-mailed NVT about Nitek's newly issued '149 Patent." (Gerstman Decl., Ex. 4, Complaint ¶ 14).[4] The press release, alone or combined with any other facts, does not create an actual controversy.

NVT alleges a "controversy" in paragraphs 15 and 16 of the Complaint, with the assertion that "Nitek's statements [in the press release] about the '149 patent and its alleged

---

[4] NVT's factual assertions in its Complaint here are disingenuous at best given that the Court in the first DJ action specifically found that "there were no threats that the defendant had directly issued at all. The press release and the statement to the world was kind of innocuous and not focused on this plaintiff at all." (Gerstman Decl., Ex. 2, Reporter's Transcript Of Proceedings, pg. 5, lines 19-22).

4
DEF.'S MEMO OF P&A'S ISO MOTION TO DISMISS COMPLAINT - CASE NO. C08-2208 MHP

sweeping scope caused NVT's customer's and sales force to become worried…". (Gerstman Decl., Ex. 4, Complaint ¶ 15). NVT alleges that the press release made people "worried" but NVT does not allege any facts that NITEK charged NVT with patent infringement nor does NVT allege that NITEK has asserted its rights under the patent against NVT. NVT only alleges that defendant NITEK "through its agents, also told NVT sales representatives that Nitek intends to enforce the '149 patent against competitors and <u>intimated</u> that NVT was a target." (Gerstman Decl., Ex. 4, Complaint ¶ 16) (emphasis added). This allegation – based on "intimation" – is baseless and less pointed than the allegation from NVT's previous attempt at maintaining a declaratory judgment action. In the Amended Complaint in the first DJ action, NVT alleged directly that "NITEK and Does 1-10 intend to assert their rights under the '149 Patent against Plaintiff, and others, to preclude Plaintiff, and others, from manufacturing and selling their products, including video systems." (Gerstman Decl., Ex. 1, ¶ 11) . At the core of these allegations are baseless statements constituting multiple hearsay.

In paragraphs 17 and 19 of its Complaint NVT refers to an alleged attempt by NITEK "to extract royalties from NVT in exchange for a license to the `149 patent" and asserts that "Nitek also presented an onerous written patent license agreement to NVT for the `149 Patent." (Gerstman Decl., Ex. 4, Complaint ¶¶ 17 and 19).[5] NITEK <u>never</u> said that NVT needed a license. The license *that NVT sought from NITEK*, alone or combined with any other facts alleged, does not create an actual controversy, as is discussed in detail below.

The instant Complaint does not allege that NITEK has charged NVT with patent infringement nor that NITEK has asserted its rights under the patent against NVT. In paragraph 20, NVT suggests that NITEK believes specific NVT products infringe the `149 patent because those products were listed in the proposed license agreement *that NVT sought from NITEK.* (Gerstman Decl., Ex. 4, Complaint ¶ 20). However, the Complaint does not specify any act of NITEK indicating that NITEK intended to assert its patent rights against NVT or those products.

---

[5] Again, NVT's assertions here are disingenuous and completely mischaracterize the facts, especially in view of the Court's finding in the first DJ action that "plaintiff [NVT]… expressed at the very least a receptivity to evaluating the license proposal that by virtue of the [first DJ] filing it was able to extract from the defendant…" (Gerstman Decl., Ex. 2, Reporter's Transcript Of Proceedings, pg. 5, lines 8-12).

5
DEF.'S MEMO OF P&A'S ISO MOTION TO DISMISS COMPLAINT - CASE NO. C08-2208 MHP

The Complaint does not allege any possible basis of an actual controversy between NVT and NITEK regarding the '149 Patent.[6]

## IV. ARGUMENT - NO "ACTUAL CONTROVERSY" EXISTS IN THIS CASE TO SUPPORT THE EXERCISE OF DECLARATORY JUDGMENT ACT JURISDICTION

In this case, no "actual controversy" exists to support the exercise of jurisdiction under the Declaratory Judgment Act.

### A. The Declaratory Judgment Act requires an "actual controversy"

The Declaratory Judgment Act requires an "actual controversy" between the parties before a federal court may exercise jurisdiction. 28 USC § 2201(a), *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 810 (Fed. Cir. 1996). This is consistent with Article III of the United States Constitution, which provides federal jurisdiction only over "cases and controversies." *SanDisk Corp. v. STMicroElectronics, Inc.*, 480 F.3d 1372, 1378 (Fed. Cir. 2007).

The declaratory judgment plaintiff (NVT here) "bears the burden of proving" the existence of an actual controversy. *Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1343 (Fed. Cir. 2007); *West Interactive Corp. v. First Data Resources, Inc.*, 972 F.2d 1295, 1297 (Fed. Cir. 1992). The declaratory judgment plaintiff is required to allege the jurisdictional facts in its Complaint, and if those facts are challenged, the declaratory judgment plaintiff must prove the underlying facts. *Jervis B. Webb Co. v. Southern Systems, Inc.*, 742 F.2d 1388, 1399 (Fed. Cir. 1984).

The Supreme Court recently considered the standard for an "actual controversy" albeit in a matter where the declaratory judgment plaintiff and defendant had an existing patent licensee/patent licensor relationship. *MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 771 (2007). The *MedImmune* Court found that an "actual controversy" exists if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory

---

[6] To the extent that NVT is determined to challenge validity of the '149 patent, it should avail itself of the reexamination mechanism available at the U.S. Patent Office.

judgment." *MedImmune*, 127 S. Ct. at 771 (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

In this case, NVT is unable to demonstrate an "actual controversy" under the Declaratory Judgment Act. Neither NITEK nor the previous joint owner Anixter has asserted its rights under the '149 Patent regarding any activity of NVT. (Gerstman Decl., Ex. 5, Polanek Decl. ¶¶ 17-18). NVT cannot point to any fact as evidence that it has been accused of infringing the '149 patent, thus its present action seeking a declaratory judgment should not stand. *Bridgelux, Inc. v. Cree, Inc.*, 2007 U.S. Dist. LEXIS 53137 (N.D. Cal. 2007)[7] ("It is undisputed that neither defendant had filed any lawsuit alleging infringement of the '175 or '703 patents, and that neither defendant has ever accused BridgeLux of infringing the patents.").

### B. NVT's allegations of jurisdictional "facts" do not demonstrate an "actual controversy" under the Declaratory Judgment Act

NVT's Complaint does not allege facts that provide any basis for finding an actual controversy.

#### 1. The press release issued by NITEK did not create an actual controversy

At most, NITEK sent copies of a press release concerning issuance of the '149 Patent to trade publications and to hundreds of customers and competitors, including NVT. It is indisputable that NITEK's press release did not accuse any company of infringement or even include the term "infringement." (*See* press release, Gerstman Decl., Ex. 5, Polanek Decl. ¶ 17, Exh. D).

NVT asserts that NITEK's general, widely circulated, press release announcing the issuance of the '149 patent is probative of the existence of a case or controversy. (Gerstman Decl., Ex. 4, Complaint ¶¶ 13, 14, 15). To elevate the issuance of this press release from ordinary, NVT argues that it was "*immediately*[8] e-mailed" to NVT. (Gerstman Decl., Ex. 4, Complaint ¶14) (emphasis added). There is no averment that the press release includes or comprises a threat of suit to any recipient or that it was specifically e-mailed to NVT in advance

---

[7] Gerstman Decl., Ex. 7.
[8] This disingenuous characterization is a step down from NVT's pleadings in the first DJ action characterizing the press release as "targeted" to NVT.

7

DEF.'S MEMO OF P&A'S ISO MOTION TO DISMISS COMPLAINT - CASE NO. C08-2208 MHP

of the general dissemination that characterizes press releases. The press release contains no threats. Nowhere in the press release does it warn of any NITEK intention to enforce its patent rights. Nowhere does the press release even remotely suggest a threat of suit. The press release, more or less, speaks for itself wherein one of the principals of NITEK and an inventor on the `149 patent is quoted as saying "The granting of this patent not only protects our intellectual property, but validates the technological leadership and product innovation that NITEK has continually demonstrated in the area of video transmission and control."[9]

NVT does not and cannot point to a single statement in the press release that extends beyond the touting of an advance in technology relating to video transmission and control. Not a single fact in the creation, wording, or dissemination of the news release goes beyond the ordinary function of disseminating information to the relevant industry. There is nothing in the press release, taken alone or in conjunction with other facts and circumstances as alleged, that is in any way threatening. The press release did not create a case or controversy.

### 2. NVT's allegation that NITEK "*intimated*" that it might "*enforce*" its rights under the '149 Patent against NVT is not supportable and does not create an actual controversy

In the present Complaint, NVT recycles second hand suggestions from its effort to establish a case or controversy in the first DJ action. At best NVT's allegations are based on "intimation." NVT alleges that defendant NITEK "through its agents, also told NVT sales representatives that Nitek intends to enforce the '149 patent against competitors and intimated that NVT was a target." (Gerstman Decl., Ex. 4, Complaint ¶ 16). This allegation is baseless.

In the first DJ action, NVT offered – as highly confidential – the declaration of NVT President, Dan Nitzan, alleging as fact a statement that he allegedly heard from an unidentified NVT representative, reporting a statement that the representative allegedly heard from an unidentified "NITEK representative." (Gerstman Decl., Ex. 8A, Declaration of Dan Nitzan ¶ 15).[10] NITEK responded to those allegations pointing out that a statement by an unidentified

---

[9] Again, in the first DJ action, the Court found that "The press release and the statement to the world was kind of innocuous and not focused on this plaintiff at all." (Gerstman Decl., Ex. 2, Reporter's Transcript Of Proceedings, pg. 5, lines 20-22).
[10] NVT designated large portions of its Opposition as Highly Confidential, including large portions of the Declaration of Dan Nitzan, despite NITEK's vehement objections. Accordingly,

8
DEF.'S MEMO OF P&A'S ISO MOTION TO DISMISS COMPLAINT - CASE NO. C08-2208 MHP

1  "NITEK Representative," even if made, was not made by NITEK or anyone authorized to speak
2  or act on behalf of NITEK.
3        The alleged statement was said to have been uttered at an industry event, the March 28-
4  30, 2007, International Security Conference ("ISC") held in Las Vegas, Nevada. The statement,
5  as declared by Mr. Nitzan, was a second hand report from an unidentified "NVT representative."
6  The identity of that NVT representative is, according to NVT, so sensitive that it is under seal
7  and the person quoted is nowhere named in the first DJ action. The double hearsay statement
8  was to the effect that Mr. Nitzan was aware that the un-named NITEK representative told the
9  unnamed NVT representative in Las Vegas that NITEK intended to enforce its '149 patent
10 against competitors and that NVT was on NITEK's "radar." (Gerstman Decl., Ex. 8A, NVT's
11 Opposition to Defendant's Motion to Dismiss, Declaration of Dan Nitzan ¶ 15). This chain of
12 "as-told-to" remarks alleged in the first DJ action comprises the only specific statement or threat
13 ever advanced by NVT as establishing any "case or controversy."
14       In any event, NITEK submitted direct evidence in the first DJ action refuting NVT's
15 hearsay, as evidenced by the declarations submitted in NITEK's Reply to NVT's Opposition to
16 NITEK's Motion to Dismiss in the first DJ action: i.e. the Declaration of Chad Szekeres,
17 NITEK's National Sales Manager (Gerstman Decl., Ex. 9); the Declaration of Carl Palash,
18 NITEK's Central Regional Sales Manager (Gerstman Decl., Ex. 10); and the Second Declaration
19 of Edward L. Polanek, a Managing Member of NITEK (Gerstman Decl., Ex. 11). According to
20 those declarations, there were only three NITEK employees at the referenced ISC conference in
21 Las Vegas and none made any statements to anyone about any NITEK plan to enforce its
22 intellectual property. If NVT has any "new facts" they have not been alleged in the present
23 Complaint.
24       In this second DJ action, NVT merely repeats its allegations, asserting that NITEK
25 "through its agents, also told NVT sales representatives that Nitek intends to enforce the '149
26 patent against competitors and <u>intimated</u> that NVT was a target." (Gerstman Decl., Ex. 4,

---

27 in the instant Motion To Dismiss NITEK must submit both a Highly Confidential (under seal)
28 and a Non-Confidential version (highly redacted) of NVT's Declaration of Dan Nitzan. The
   Court should focus on the Declartion of Dan Nitzan filed under seal.

9

DEF.'S MEMO OF P&A'S ISO MOTION TO DISMISS COMPLAINT - CASE NO. C08-2208 MHP

Complaint ¶ 16) (emphasis added). As in the first DJ action, NVT in the present Complaint again relies on a purported conversation of an un-named NVT sales representative without explanation as to why NVT did not or could not have obtained a declaration of that representative. In the hearsay alleged, no NITEK "agents" are specifically identified. Such allegations can not be the basis of a controversy to support a declaratory judgment action.

NITEK submits, again, that any such statement is rank hearsay not probative of **any** fact, and its unreliability is indicative of its veracity. *Bridgelux, Inc. v. Cree, Inc.*, 2007 U.S. Dist. LEXIS 14472 (N.D. Cal., Feb. 15, 2007) (statements in a declaration that are hearsay or double hearsay cannot be admitted into evidence and cannot support a claim that an "actual controversy" existed with regard to the patent at the time an action is filed).

In the THIRD DECLARATION OF EDWARD L. POLANEK ("Third Polanek Decl."), submitted in the instant action, Mr. Polanek states unequivocally that he has not made any statements to anyone with regard to, nor does NITEK have any plans for enforcement of any NITEK intellectual property rights against NVT. (Third Polanek Decl. ¶ 4). Mr. Polanek states unequivocally that to his knowledge, no one at NITEK has made any statements to anyone regarding NITEK's plans for enforcement of any NITEK intellectual property rights against NVT, and that since the filing of the first DJ action he has instructed people at or working on behalf of NITEK to not make any statements whatsoever regarding the relationship of any NITEK patents to any NVT product. (Third Polanek Decl. ¶¶ 4-5). NITEK's intention is, and has been, to <u>avoid</u> any controversy with NVT. (Third Polanek Decl. ¶ 5). There can be no controversy between NITEK and NVT regarding the `149 patent because to date, NITEK has made no evaluation of, nor reached any determination that, a product of NVT is infringing any claim or claims of United States Patent No. 7,193,149. (Third Polanek Decl. ¶ 6).

### 3. The license sought by NVT and provided in response to NVT filing the first DJ action does not support an actual controversy

Although NITEK was not seeking to grant a license to NVT prior to the filing of the first DJ action, in order to avoid a protracted lawsuit and to accommodate NVT, NITEK was willing to grant a non-exclusive license based on the payment of royalties. (*See* Gerstman Decl., Ex. 12,

1  Letter from George H. Gerstman of August 24, 2007 to NVT Counsel Gary A. Hecker).  It could
2  not be clearer from the communications that NITEK's license proposal was made in response to
3  NVT's counsel's request and was for settlement purposes only.  NITEK never stated or even
4  hinted that NVT needed a license.

5  After demanding a blanket covenant not to sue any NVT products or activities, under the
6  threat of a protracted suit, NVT **_sought_** a license proposal from NITEK, as confirmed by letter
7  from NVT's counsel to NITEK's counsel.  (*See* Gerstman Decl., Ex. 13, NVT Counsel Gary A.
8  Hecker's August 24, 2007 letter to NITEK Counsel George Gerstman).  While NITEK indicated
9  in discussions and via a letter from its counsel to NVT's counsel that it was **_not_** planning to sue
10  anyone under the '149 patent nor license it, NITEK did indicate that it "might be willing to
11  license [the '149 patent] to NVT."  Accordingly, NITEK's counsel forwarded a proposed
12  License Agreement **_at NVT's request._**

13  NVT's Complaint in this second DJ action disingenuously presents the proposed license
14  agreement as an attempt initiated by NITEK "to extract royalties" (Gerstman Decl., Ex. 4,
15  Complaint ¶ 17).  It is clear from the facts that NITEK presented a proposed written license
16  agreement for licensing the '149 patent to NVT <u>only</u> after the first DJ action had been filed and
17  <u>only</u> at the request of NVT's counsel.  (Third Polanek Decl. ¶ 7).[11]  Surely, the license proposed
18  for the '149 patent listed products on which a royalty would be paid, but NOT because NITEK
19  believed that any of those products infringed the '149 patent.  The '149 patent relates to
20  structured cabling systems for Closed Circuit Television ("CCTV") applications.  The proposed
21  written license agreement for licensing the '149 patent that NITEK's counsel presented to NVT
22  sought royalties on products related to structured cabling for CCTV, because NITEK believed
23  that NVT was seeking a license to use the '149 patent in relation to structured cabling systems
24  for CCTV. (Third Polanek Decl. ¶ 8).  To date, NITEK has made no evaluation of, nor reached

---

[11] The Court in the first DJ action found, contrary to NVT's assertions here, that it was NVT that sought to "extract" a license. *See* footnote 3 herein.

any determination that, any product of NVT is infringing any claim or claims of United States Patent No. 7,193,149. (Third Polanek Decl. ¶ 9).[12]

In any event, NITEK's license proposal, sought by NVT, is irrelevant. A mere offer of a patent license does not create an actual controversy. *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 811 (Fed Cir. 1996); *IVX Animal Health, Inc. v. Burger*, 475 F. Supp. 2d 1264, 1267 (2007). Patent owners routinely offer royalty bearing licenses to companies, even companies that are not yet manufacturing the patented subject matter. Obviously, no case or controversy is created by this or the courts would be flooded with such "controversies."

Even on a second try at establishing declaratory judgment case or controversy NVT has not pointed to any certain or identifiable product allegedly in dispute. Astonishingly, NVT looks to support its argument for the existence of a case or controversy to activity that occurred during the pedency of the first DJ action, by making reference to NITEK's offer to license the '149 patent to NVT. (Gerstman Decl., Ex. 4, Complaint, ¶¶ 17 and 19). NVT cites a list of products that the proposed license identified. (Gerstman Decl., Ex. 4, Complaint ¶20). The list does nothing to define any product in dispute and the Complaint makes no allegation that any particular product is in dispute or accused of infringement.

### 4. None of the facts alleged by NVT, alone or in combination support an actual controversy

The deficiency in NVT's subject matter jurisdiction allegation is evinced by NVT's Complaint which fails to allege any facts that would support a finding of an "actual controversy." At most, NVT merely alleges that NITEK "*intimated*" that it might "*enforce*" its rights under the '149 Patent against NVT. (Gerstman Decl., Ex. 4, Complaint, ¶ 16) (*emphasis added*). NVT's speculation as to what NITEK "intimated" as to an assertion of rights against NVT falls well

---

[12] Review of the '149 patent specification and claims makes clear that it does not cover a particular product – instead it covers a CCTV "system" for interfacing with a structured cabling system of a building. (*See* Gerstman Decl., Ex. 6). This is analogous to a situation involving a telecommunication patent in which the claims cover a telecommunication system involving the combination of telephones, computers, fiberoptics, the Internet, etc. The telecommunication *system* patent is owned by patent owner A, which also manufactures telephones *per se*. Competitor B, who competes in the telephone business, cannot show the creation of an actual controversy merely because competitor B sells a telephone that can potentially be used in patent owner A's patented telecommunication system.

short of the standard set forth by *MedImmune* requiring "a substantial controversy ... of sufficient immediacy and reality...." *MedImmune*, 127 S. Ct. at 771.

Further, NVT has not alleged that it engages in any activity that could subject it to a suit for infringement. NITEK has not accused any NVT product of infringement and NVT has not identified any product of its own it believes could be subject of a suit. There is no basis for this Court to permit NVT to pursue its declaratory judgment action. *Benitec*, 495 F.3d at 1344 (The facts do not provide the immediacy and reality required for a declaratory judgment). For direct infringement, NVT must show that it was making, using, offering to sell, selling, or importing a potentially infringing system (35 USC § 271(a)). For inducing infringement, NVT must show that it actively induced another to perform a potentially infringing act (35 USC § 271(b)). For contributory infringement, NVT must show that another company is potentially performing an act of direct infringement, and that NVT sold to that other company apparatus used in the potential act of direct infringement, that the apparatus constituted a material part of the invention, and that NVT knew that the apparatus was specially adapted for this potential act of infringement and that the apparatus does not constitute a staple article with substantial noninfringing use (35 USC § 271(c)).

If NVT cannot provide evidence that NVT engaged in potentially infringing activity (direct, inducement or contributory infringement), and that NITEK asserted its patent rights against NVT based on ongoing or planned potentially infringing activity of NVT, there is no "actual controversy" and the Complaint must be dismissed. *See e.g. Geisha v. Tuccillo*, 2007 U.S. Dist. LEXIS 65348 (N.D. Ill. 2007)[13] (no actual controversy found where plaintiff could only demonstrate "a mere and distant possibility of potentially infringing activity, rather than a real, immediate, or imminent threat").

If NVT were allowed to maintain a declaratory judgment action under the present circumstances, any competitor could bring suit for a declaratory judgment of non-infringement and invalidity of a competitor's patent, merely because the declaratory judgment plaintiff thought that a controversy may arise in the future, even though the defendant never asserted its

---

[13] Gerstman Decl., Ex. 14.

rights against the plaintiff based on any ongoing or planned activity of the declaratory judgment plaintiff. *See Bridgelux*, 2007 U.S. Dist. LEXIS 53137 at *24 ("[t]he same could be said of many patent-holders"). This would overburden the federal courts with declaratory judgment plaintiffs requesting advisory opinions without any real dispute between the parties. *Id.* If NVT believes the `149 patent is invalid it can file a reexamination proceeding at the U.S. Patent & Trademark Office.[14]

Because NITEK has not asserted any rights under the '149 Patent based on any identified ongoing or planned activity of NVT, and because NVT has not articulated any such assertion sufficient to establish a definite and concrete dispute, NVT has failed to establish the essential element required for a declaratory judgment under the applicable law. Accordingly, this action must be dismissed for lack of subject matter jurisdiction.

### C. This Court should decline to exercise jurisdiction even if an actual controversy exists

Even if "there is an actual controversy, the district court is not required to exercise declaratory judgment jurisdiction." *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 810 (Fed. Cir. 1996), *abrogated on other grounds by Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 2007 U.S. App. LEXIS 18465 (Fed. Cir. 2007). As long as a court "acts in accordance with the purposes of the Declaratory Judgment Act and the principles of sound judicial administration, the court has "unique and substantial discretion to dismiss the declaratory judgment action." *Wilton*

---

[14] In its complaint, NVT asserts that '149 patent is invalid under Title 35 but NVT does not state any of the basis for invalidity. If NVT has a beef about invalidity, they can go to the experts at the USPTO rather than burdening NITEK and the Courts with expensive litigation. 35 U.S.C. §301 states, in part, "Any person at any time may cite to the Office in writing prior art consisting of patents or printed publications which that person believes to have a bearing on the patentability of any claim of a particular patent." As stated in the legislative history of the reexamination statute, the procedure "will permit any party to petition the Patent Office to review the efficacy of a patent, subsequent to its issuance, on the basis of new information about preexisting technology which may have escaped review at the time of the initial examination of the patent application. Reexamination will permit efficient resolution of questions about the validity of issued patents without recourse to expensive and lengthy infringement litigation." H.R. Rep. No. 96-1307 at 3-4.

*v. Seven Falls Co.*, 515 U.S. 277 (1995). This court should examine whether hearing a declaratory judgment action would serve the objectives for which the Declaratory Judgment Act was created and should decline to exercise jurisdiction if the action would not serve those objectives. *EMC*, 89 F.3d at 814. Since there is no immediate, concrete dispute between NVT and NITEK on the '149 Patent, consideration of NVT's claims for declaratory relief would be a waste of judicial resources. This declaratory judgment action merely seeks an advisory opinion based on mere speculation and hypothetical facts. Accordingly, for the sake of judicial efficiency, this Court should decline to exercise jurisdiction, even if for some reason this Court holds that under the Declaratory Judgment Act there is an actual controversy.

## V. CONCLUSION

For the forgoing reasons, this Court should grant NITEK's motion to dismiss for lack of subject matter jurisdiction.

DATED: June ___, 2008

SEYFARTH SHAW LLP
ROBERT S. NIEMANN
GEORGE H. GERSTMAN (Applied for *Pro Hac Vice*)
BRIAN MICHAELIS (Applied for *Pro Hac Vice*)


By_____
Attorneys for Defendant
NITEK INTERNATIONAL, LLC

SF1 28325503.1 / 25663-100200

15
DEF.'S MEMO OF P&A'S ISO MOTION TO DISMISS COMPLAINT - CASE NO. C08-2208 MHP