United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETWORK VIDEO TECHNOLOGIES, INC., | No. C 08-2208 MHP |
| Plaintiff, | **MEMORANDUM & ORDER** |
| v. | **Re: Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction Under F.R.C.P. 12(B)(1)** |
| NITEK INTERNATIONAL, LLC and DOES 1-10, | |
| Defendants. | |

     Plaintiff Network Video Technologies, Inc. ("NVT") brings this action against defendant Nitek International, LLC ("Nitek") for declaratory judgment of patent non-infringement, invalidity and unenforceability of defendant's patent. Now before the court is defendant's motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Plaintiff has filed opposition, to which defendant has replied and plaintiff has sur-replied. Having considered the arguments and submissions of both parties, and for the reasons set forth below, the court rules as follows.

BACKGROUND

     NVT is a California corporation founded in 1990 and maintains its principal place of business in Menlo Park, California. Nitzan Dec., ¶¶ 2, 4. NVT designs and sells products for transmitting closed circuit television ("CCTV") over unshielded twisted pair ("UTP") wire in structured cabling networks commonly used in office buildings for telephone systems and computer/security networks. Id. at ¶¶ 4–5. NVT products enable the transmission of power/video/data ("PVD") signals over UTP for the CCTV industry. Id. at ¶ 6. PVD is a trademark of NVT. Id.

Nitek is an Illinois corporation with its principal place of business in Rolling Meadows, Illinois. Polanek Dec., ¶ 1. Nitek sells products primarily used in CCTV systems that provide power, video links and data links over twisted pair cables and leased telephone lines for the security industry. Id. UTPLinks® is a Nitek product that provides a system for video, control and power. Polanek Dep. at 17:11-18 and Dep. Exh. 3–5. NVT and Nitek are business competitors. Nitzan Dec., ¶ 8; Polanek Dec., ¶ 8. NVT and Nitek sell competing products and compete for the same projects. Polanek Dep. at 75:1–11.

Nitek is the sole owner of U.S. Patent No. 7,193,149 (the '149 patent), entitled "System Handling Video, Control Signals and Power." Gerstman Dec., Exh. 7. The '149 patent issued on March 20, 2007. Id. Anixter, Inc., headquartered in Glenview, Illinois, was a co-owner of the patent with Nitek until October 2007, when Anixter assigned its rights to Nitek and obtained a non-exclusive patent license. Polanek Dec., ¶¶ 6–7. Shortly after the '149 patent issued, Nitek issued a press release that was placed on Nitek's website and sent to various companies, including customers, competitors and trade publications. Polanek Dec., ¶ 17. NVT sales representatives and NVT customers received the press release in e-mail form directly from Nitek. Nitzan Dec., ¶¶ 12–13. The press release, written by Nitek's president Edward Polanek, announced that Nitek had been awarded a U.S. Patent for the "core technology of its UTPLinks® structured cabling compliant CCTV system and other proprietary Nitek products" and that the patent "covers the use of structured cabling networks to deliver power, video and data for control (PVD) to cameras and PTZ units in a CCTV system." Nitzan Dec., Ex. 3–5. The press release also quoted one of the inventors on the patent and principals of Nitek, stating:

> "The granting of this patent not only protects our intellectual property, but validates the technological leadership and product innovation that Nitek has continually demonstrated in the area of video transmission and control. The Nitek UTP transmission system for delivery of video, power and data within a structured cabling network enables a transition from traditional Closed Circuit Video that requires three separate, home-run cables for video, power and control, to a convergence of CCTV into the network cabling environment. The same cabling infrastructure used by the data and telecommunications systems."

Id.

NVT contends that Nitek's assertions about the '149 patent and its scope caused NVT's customers to become concerned about the legal risks associated with purchasing NVT products.

2

Nitzan Dec., ¶ 13. NVT alleges that Nitek has stated to NVT's sales force at a trade show that Nitek intended to enforce the '149 patent against competitors including NVT. Id. at ¶¶ 14–15. Finally, NVT alleges that Nitek engaged then co-owner Anixter to propose a royalty-bearing license to NVT prior to NVT filing suit (Id. at ¶¶ 16–17) and that Nitek later directly offered NVT a royalty-bearing patent license agreement for specifically identified NVT products, after NVT filed suit. Pl.'s Opp., Exh. 6.

Nitek denies having ever directly or indirectly threatened suit against NVT. Polanek Dec., ¶¶ 17–18. Nitek alleges that it has never asserted its rights under the '149 patent, or any other patent, against NVT or anyone. Id. Nitek denies having had any pre-litigation communication with NVT concerning the '149 patent, other than the press release. Polanek Dec., ¶ 17. Nitek alleges that there were three (3) Nitek employees at the aforementioned trade show and none made any statements to anyone about Nitek plans to enforce the '149 patent. Szekeres Dec.; Palash Dec.; Second Polanek Dec. Finally, Nitek alleges that NVT sought a license from Nitek after filing suit and Nitek provided a proposed license solely as an offer to compromise and for the purposes of settlement. Gerstman Dec., Exh. 13; Pl.'s Opp., Exh. 6.

In the instant action, NVT seeks a declaration of its rights with respect to the '149 patent. NVT requests that the court find that it does not infringe any valid claim of the '149 patent and that the patent is invalid and unenforceable due to inequitable conduct. Nitek has moved to dismiss plaintiff's complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). NVT opposes the motion.

A prior action for declaratory judgment was filed by NVT against co-defendants Nitek and Anixter in the United States District Court for the Central District of California. Network Video Technologies Inc. v. Nitek International, Civil Action CV-07-4789 AHM (RZ). Anixter was later dismissed from that action without prejudice. See Notice of Dismissal, Docket Entry # 6. Nitek moved to dismiss the complaint for lack of subject matter jurisdiction or personal jurisdiction or, alternatively, to transfer venue. See Notice of Motion, Docket Entry # 12. The case was dismissed without prejudice.[1] See Minutes of Hearing, Docket Entry # 31. An appeal by NVT is currently pending in the United States Court of Appeals for the Federal Circuit, Case 08-1287. See Notice of

3

Appeal, Docket Entry # 34.  See also Gerstman Dec., Exh. 3; Joint Case Management Conference Statement/Report at 4:2–4.  NVT has stipulated that it will dismiss the appeal as moot if the court denies Nitek's pending motion to dismiss the present action.

LEGAL STANDARD

I.      Declaratory Judgment Act

The Declaratory Judgment Act ("DJ Act") provides: "In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  The Supreme Court has clarified that the phrase "case of actual controversy" in the DJ Act refers to the type of cases and controversies that are justiciable under Article III of the Constitution.  Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240–41 (1937); SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1378 (Fed. Cir. 2007) (noting that federal jurisdiction under the DJ Act extends only to matters that are Article III cases or controversies).  Whether an actual controversy exists under the DJ Act is a question of law for the court to decide.  Teva Pharms. USA, Inc. v. Novartis Pharms. Corp., 482 F.3d 1330, 1336 (Fed. Cir. 2007).

In determining whether a plaintiff's claim properly invokes the DJ Act, courts consider "whether the facts alleged, under all of the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 S.Ct. 764, 771 (2007).  A declaratory judgment plaintiff must demonstrate, by a totality of the circumstances, the presence of an actual or imminent injury caused by the defendant that can be redressed by judicial relief.  Teva Pharms, 482 F.3d at 1338.  In the context of a patent case, an actual controversy exists "where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do."  SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1381 (Fed. Cir. 2007).

4

1    An express charge of patent infringement is not necessary to establish an actual controversy;
2 it may be inferred from the conduct of the parties alone. Shell Oil Co. v. Amoco Corp., 970 F.2d
3 885, 888 (Fed. Cir. 1992) ("When the defendant's conduct, including its statements, falls short of an
4 express charge, one must consider the 'totality of the circumstances.'") (internal citation omitted).
5 While the Supreme Court in MedImmune rejected the "reasonable apprehension of suit" test as the
6 standard for determining declaratory judgment jurisdiction in patent disputes, a reasonable
7 apprehension on the part of the declaratory judgment plaintiff that it would face an infringement suit
8 is nonetheless a factor to be considered in the more general totality of or "all the circumstances" test
9 to establish a justiciable controversy. MedImmune, 127 S. Ct. at 774 n. 11, 775–76; SanDisk, 480
10 F.3d at 1380 (confirming the rejection of the reasonable apprehension test in the context of conduct
11 prior to the existence of any license); Prasco, LLC v. Medicis Pharmaceutical Corp., 2008 WL
12 3546217, *3, *5–6 (Fed. Cir. 2008) (denoting various factors to be considered in assessing whether
13 the totality of the circumstances creates an actual controversy).

14    Under the Supreme Court's revised MedImmune standard, a court can exercise "substantial
15 discretion in deciding whether to declare the rights of litigants" and may decline to exercise
16 jurisdiction under the DJ Act if there is a sound basis to do so. See MedImmune, 127 S. Ct. at 777;
17 see also SanDisk, 480 F.3d at 1383 (noting that in the usual circumstance the declaratory judgment
18 is not subject to dismissal if adjudicating it would "settle the legal relations in dispute and afford
19 relief from uncertainty or insecurity.")

20 II.    Subject Matter Jurisdiction

21    A party may raise a challenge to the court's exercise of jurisdiction over the subject matter of
22 a declaratory judgment action under Federal Rule of Civil Procedure 12(b)(1). Dismissal is
23 appropriate under Rule 12(b)(1) when the plaintiff has failed to establish federal jurisdiction over the
24 claim. Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir.1979). In ruling
25 on a challenge to subject matter jurisdiction, a determination of jurisdiction by the standard of a Rule
26 12(b)(1) motion is appropriate when the jurisdictional issue is separable from the merits of the case,
27 i.e., where jurisdiction and substantive facts are not intertwined. Roberts v. Corrothers, 812 F.2d
28 1173, 1177 (9th Cir. 1987). In such instances, "[n]o presumptive truthfulness attaches to plaintiff's

allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id. (internal citations omitted). By contrast, when ruling on a challenge to subject matter jurisdiction involving factual issues that go to the merits, the court should employ the standard applicable to a Rule 12(b)(6) motion or a motion for summary judgment. Trentacosta v. Frontier Pacific Aircraft Industries, Inc., 813 F.2d 1553, 1558 (9th Cir. 1987) (citations omitted). Under this standard, "the moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Augustine v. U.S., 704 F.2d 1074, 1077 (9th Cir. 1983). Unless that standard is met, the jurisdictional facts must be determined on a motion going to the merits or at trial. Id.

DISCUSSION

I.      Standard of Review

In the present case, the DJ Act, along with the federal patent statutes, provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief. Jurisdiction exists if there is an actual controversy that is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. MedImmune, 127 S. Ct. at 771. Because the actual controversy requirement is tied to the merits of the claim as well as the jurisdictional aspects of the case, i.e., because the material facts are in dispute, the present attack on jurisdiction requires the court to consider the merits of the case. As such, the court cannot properly consider this a purely jurisdictional issue and thus is required to apply Rule 12(b)(6) standards in ruling on defendant's motion to dismiss for lack of jurisdiction under Rule 12(b)(1). Thornhill Pub. Co., 594 F.2d at 734 (citing Land v. Dollar, 330 U.S. 731, 739 (1947)). Accordingly, defendant's motion to dismiss for lack of subject matter jurisdiction should be granted only if the allegations of the facts in the complaint, if true, are frivolous. Id.

II.     Subject Matter Jurisdiction

Jurisdiction attaches when the facts allege, under all the circumstances, a substantial controversy, between parties of adverse interests, that is real and substantial and admits specific relief distinguishable from an advisory opinion on a hypothetical set of facts. MedImmune, 127 S.

Ct. at 771. Plaintiff argues that a real and substantial controversy exists because plaintiff faces uncertainty and great potential risk of suit from its competitor. Defendant argues that jurisdiction should not attach because plaintiff has not evinced an actual controversy concerning the '149 patent at the time that plaintiff filed the present action. Specifically, defendant asserts that plaintiff's claim is based on a generic press release that served to disseminate information to the relevant industry and nothing in it presented a threat, warning or accusation directed at plaintiff. Defendant denies that it told anyone that plaintiff infringed the '149 patent and the evidence on which plaintiff relies constitutes inadmissible out of court statements, by an unidentified representative of defendant to an unidentified representative of plaintiff, that cannot prove actual threats of suit. Defendant maintains that, while it offered to license the '149 patent to plaintiff after the first declaratory judgment action was filed, it was at the request of plaintiff and solely to settle the action. Defendant concludes there is no real immediacy that it will bring suit on the '149 patent. Throughout its papers, defendant points to Judge Matz' oral ruling in the prior action to suggest that plaintiff is improperly seeking to gain a tactical advantage and forum-shop under the guise of the DJ Act's mandate. See Gerstman Dec., Exh. 2 at 4-5.

In response, plaintiff represents it is properly attempting to preempt a patent infringement lawsuit and to seek a legally binding affirmation that it is not infringing defendant's recently issued patent. Plaintiff asserts that defendant has created jurisdiction under the DJ Act by its actions that create uncertainty in the competitive environment and the business community in which the parties operate. Plaintiff argues that the press release and statements made by defendant's employees to plaintiff's sales representatives and customers present sufficient evidence to establish an actual controversy for declaratory judgment jurisdiction.

The existence of an adversely held patent is not enough to create a controversy, nor is the fact that defendant stated publicly in press releases that its technology was patent protected and that it would enforce its patent. See, e.g., Bridgelux, Inc. v. Cree, Inc., 2007 WL 2022024 at *9 (N.D. Cal. 2007) (Hamilton, J.) (characterizing as "unremarkable" defendant's public statements at industry meetings that it would defend its patents; finding such statements insufficient "to warrant a conclusion that defendants had inflicted 'actual and imminent injury' on plaintiff . . ."). In this case,

it is undisputed that defendant has not filed any lawsuit alleging infringement of the '149 patent and that defendant has not ever expressly threatened plaintiff with suit. However, the Supreme Court has embraced the notion that both implicit and explicit threats by a patent owner can establish declaratory judgment jurisdiction. MedImmune, 127 S. Ct. at 772 (ruling that the elimination of the imminent threat of prosecution does not eliminate Article III jurisdiction). The Federal Circuit has subsequently declined to hold that a patentee's statement that it had "absolutely no plan whatsoever to sue" the plaintiff eliminated the justiciable controversy created by patentee's actions. SanDisk, 480 F.3d at 1383. Rather, the Federal Circuit concluded that the patentee "engaged in a course of conduct that shows a preparedness and willingness to enforce its patent rights" despite that statement. Id. With this guidance, the requirements for declaratory judgment jurisdiction may be satisfied when a patent holder has made no indications that it will file suit but has taken positions or made demands such that a declaratory judgment plaintiff justifiably believes that the defendant patent holder might take such action in the future.

      In that regard, defendant has not said that it would not file suit in the future, and has refused to sign a covenant not to sue. Defendant's refusal to give such assurances is a factor to be considered under the "all the circumstances" test on which defendant relies so heavily in its reply motion to argue for dismissal. Prasco, 2008 WL 3546217 at *7. Case law makes clear that plaintiff should not have to sit and wait an indefinite time to be sued, after licensing/settlement discussions have broken down. See, e.g., SanDisk, 480 F. 3d at 1381. Plaintiff maintains that whether or not defendant has publicly accused plaintiff of infringing the '149 patent is not dispositive to determining whether an actual controversy exists. The court agrees. The DJ Act cannot be read so narrowly as to require that a party actually be confronted with an express threat of litigation. Shell Oil Co. v. Amoco Corp., 970 F.2d 885, 888 (Fed. Cir. 1992); Sony Electronics, Inc. v. Guardian Media Technologies, Ltd., 497 F.3d 1271, 1284 (Fed. Cir. 2007) ("the Declaratory Judgment Act was intended to fix the problem that arises when the other side does not sue.")

      Defendant's argument that plaintiff could not objectively perceive an express fear of suit because the '149 patent claims are system claims and defendant has not asserted that plaintiff's products infringe those claims is unconvincing. Plaintiff alleges that its customers and sales force,

8

who buy and sell plaintiff's products for use in a system that competes with defendant's system, became fearful of the legal risks associated with purchasing plaintiff's products. This fear is rational and real under the Patent Act: It is called indirect infringement. See 35 U.S.C. § 271(b), (c). Both a supplier and an ultimate user of an unpatented product could be found guilty of indirect infringement if the product is sold and used in an infringing manner (and the product has no substantial non-infringing uses). See, e.g., DSU Med. Corp. v. JMS Co., 471 F.3d 1293 (Fed. Cir. 2006). Therefore, defendant's argument that the '149 patent inherently fails to create a cloud in plaintiff's competitive environment and the business community fails as a matter of basic patent law.

Plaintiff's allegations of jurisdiction rest on the existence of the '149 patent, defendant's public statements concerning issuance of that patent, and defendant's subsequent actions after the filing of the first action by plaintiff to obtain declaratory relief, which includes defendant's unwillingness to provide plaintiff with a covenant not to sue and defendant's offer of a license to that patent. The SanDisk decision makes clear that declaratory judgment jurisdiction broadly attaches when a patentee engages a prospective licensee in licensing discussions and the prospective licensee disagrees with the patentee about the need for a license, i.e., because of noninfringement or invalidity. On the facts as alleged, jurisdiction attaches because defendant attempted to extract patent royalties from plaintiff in exchange for a license to the '149 patent. However, if plaintiff filed suit solely to procure a license from defendant so as to engineer post-filing grounds for the lawsuit, SanDisk's application would be less compelling and the basis for jurisdiction would be undercut. This is particularly true if the court were to find that defendant had in fact previously held back its patent from pre-suit licensing discussions. Plaintiff is reminded that the it bears the burden to establish that declaratory judgment jurisdiction existed at the time the claim for declaratory relief was filed and that burden remains with the party seeking to invoke jurisdiction at all stages of review. Benitec Australia, Ltd. v. Nucleonics, Inc., 495 F.3d 1340, 1344 (Fed. Cir. 2007).

The presence of an actual or imminent injury caused by the defendant that can be redressed by judicial relief is a jurisdictional prerequisite to maintaining a declaratory judgment action. The court finds that the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on resolution of factual issues going to the merits of the action. In essence,

9

a resolution of the jurisdictional facts is akin to a decision on the merits.  The moving papers established a clear conflict as to the key factual issues in the case. Thus, the court is bound to apply summary judgment standards in deciding whether to grant or deny defendant's motion to dismiss. Trentacosta, 813 F.2d at 1558.

Absent a bright line rule for finding a controversy contemplated by the DJ Act, the court's determination is necessarily one of degree.  Sony Electronics, 497 F.3d at 1283.  The facts alleged, under all the circumstances, do not present a premature or unripe filing of a declaratory judgment action but instead evidence a sufficient controversy between two parties that have each acknowledged their adverse interests.  The alleged injury-in-fact is fairly traceable to the patentee and constitutes an immediate and real controversy for the purposes of the DJ Act.  Because the alleged injury is also redressable by a favorable decision in this action, it is properly justiciable.  See Prasco, 2008 WL 3546217 at *5 (outlining the requirements of a justiciable controversy from a "standing" perspective, as sanctioned by MedImmune).  Accordingly, the court denies Nitek's motion to dismiss on jurisdictional grounds and to await the further determination of facts relevant to jurisdiction after proper consideration of the merits.  Augustine, 704 F.2d at 1077.  A contrary result would only increase the potential for further litigation.

The court is mindful that it is under a continuing duty to dismiss an action whenever it appears that it lacks jurisdiction.  See Fed. R. Civ. P. 12(h)(3); see also, Csibi v. Fustos, 670 F.2d 134, 136 n. 3 (9th Cir.1982) (noting that lack of subject matter jurisdiction can be raised *sua sponte* by a court at any time as it is "the duty of the federal courts to assure themselves that their jurisdiction is not being exceeded.")  The court notes that the original declaratory judgment action before Judge Matz in the Central District of Los Angeles was dismissed without prejudice. Network Video Technologies Inc. v. Nitek International, Civil Action CV-07-4789 AHM (RZ).   An appeal by NVT is currently pending in the United States Court of Appeals for the Federal Circuit, Case 08-1287.  NVT submits that it will dismiss the appeal as moot if the court denies Nitek's pending motion to dismiss the present action. Accordingly, this court will retain jurisdiction over the present cause of action for the time being, but will reconsider this decision if the appeal is not dismissed.

CONCLUSION

For the reasons stated above, defendant's motion to dismiss is hereby **DENIED.**

IT IS SO ORDERED.

Dated: October 20, 2008

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

**ENDNOTES**

1. Judge Matz did not issue an order dismissing the prior action in the Central District. Accordingly, the parties have relied on the hearing transcript. The Reporter's Transcript Of Proceedings appears in the present record as Gerstman Dec., Exh. 2.